I'm D. Cullen Sr., and I'm honored to appear today on behalf of the appellants. With your leave, I would like to reserve three minutes for rebuttal. Yes, you may have that. Thank you. There are two main issues that I plan to address today with your interest. The first issue is whether or not the Secretary of Transportation or the sub-agency Federal Motor Carrier Safety Administration exceeds their statutory authority when they release to motor carriers reports of violations, driver violations, for pre-employment screening purposes, violations that are not identified by the Secretary as serious violations within the meaning of 3150D. The second issue asks, whatever statutory authority the Secretary may have, he may only release reports of such violations with the driver's written consent. FMCSA specified a specific mandatory consent form, and the issue is whether or not that consent form authorizes the release of reports of violations not determined by the Secretary to be serious. Both the court below and opposing counsel today assert that the Secretary... I'm sorry. Your second argument seems to be dependent on your first argument. If you're arguing that consent is invalid, why isn't it invalid as to all categories of safety information? If the consent is invalid, it is invalid with respect to the release of just about anything. Not simply this extra safety information. I'm just trying to understand your argument. Certainly. Let's look at that. Under the Privacy Act, 552AE4, an agency must create a system of records that it proposes to disclose to the public with the written consent of the driver. When the agency prepared this specific system of records, it defined what records would be included, and in making that definition, both in the official system of record notice published in the Federal Register and in the Privacy Impact Analysis, which accompanies the system of record notice, it said that out of the larger MIGMAS database, that is the report of all violations reported by the states to the Federal Government, serious, non-serious, everything. Out of that vast database, they would only extract the records identified in 3150A, that is crash reports, reports not involving driver violations, truck defects and the like, and reports of serious driver-related violations. They did not identify in the systems of record notice and in the PIA reports of non-serious violations. Yes, but in not doing that, that's not a limitation necessarily. You are saying to us that because there are three categories mentioned, that that's it. Well, if you look at it and you look at the background of why this has been done to enhance safety and to make it more likely that drivers on the road are going to not be serial violators, isn't this a reasonable request for the kind of information which they already have and to allow that to go to an employer, the idea being that the employer makes a better judgment on the future employee? Well, the policy judgment that it's a good idea to release reports of driver violations was made by Congress, and they didn't give the Secretary unlimited discretion. Well, they could have limited that clearly to those three items they didn't. They did. Our contention, Your Honor, is that the statute itself limits it to those three items, and the statute in subsection C says that this section is designed to let motor carriers make their judgments based on serious violations. And if they had stopped there, the Secretary might have had some discretion to decide what is serious, but they didn't stop there. In D, they defined serious as a kind of violation that must be corrected before the driver can continue to haul the freight. That's a very serious violation. And so his discretion was severely limited there. And under the principle of expressi illuminis, who identify three items by necessary implication in that principle of statutory interpretation, all other items are excluded. And when you look at the pre-litigation statements by the agency in the PSP system of records, in the system of records notice and in the PIA, they define what was going to be released exactly as the appellants define it. That's inconsistent with their post-litigation decision to include everything. Well, they could have added the word only in the statute. That would make your position clear. They didn't do that. The way the statute at least reads to me, there perhaps is an ambiguity, and that ambiguity is sufficient given the overall intention of Congress to improve safety on the highways that the agency has the right to include this as important information to a prospective employer. The cases that we cited under the doctrine of expressi illuminis do not require that the word only be there, although perhaps in your view it would have made it absolutely clear without invoking expressi illuminis. But they identified three, and the interpretation, even if you assume some ambiguity there for prong one of Chevron, the interpretation must be reasonable. And it is not reasonable here because pre-litigation statements as to what this means made by the agency in the system of record notice and in the privacy impact analysis describe plainly what's going to be there, and they only describe the three categories identified in the PSP statute. Since one is at the test for reasonableness, you're saying there may have been some procedural violations. They should have given more notice. But how does that relate to the question of whether this was a reasonable choice by the agency? I don't think your argument follows. No, we're not alleging some procedural violation. We're alleging a substantive violation. They exceed their statutory authority. What is reasonable was determined by Congress. That's your step one argument. If you lose on that, what is your argument on step two? I've only heard the procedural argument. Well, on step two, their current interpretation conflicts with their original interpretation as set forth in the system of record notice and in the PIA. But under the Privacy Act, 552AE6, I believe, in order to release records from a system of records, you must identify the categories of records that are in that system of records. And they did not identify as a category of record records of non-serious violations. Counsel, it's hard to reconcile your position if we find ambiguity with the overall purpose of improving highway safety. I mean, clearly, any record of violation, be it serious or non-serious, can be used to evaluate drivers. It can be. But the issue before the court, if you really think about it, is not whether or not presenting violations is a good choice to make, is a valid and reasonable choice. Congress made that choice, and it was the first time ever that they allowed driver violations to be made public in any fashion at all. If you look at the regulatory history in the opening sections of our brief, it had never been done before. But so what? Well, one of the final reasons... Why should a driver's record be private in that regard? Because Congress made it private. Congress made it private through the Privacy Act, and Congress said it's a good idea to release some of these reports, but when you release them, we want the loan accounts. Look at Subsection C. We want the PSP reports to be designed to let the loaner carrier know about serious reports, and they define serious in D. And so they could have gone further. Maybe it is a good idea to go further. I don't think so. And there's reports in the legislative history about... Okay, all right. Now you're getting to the nub of it. Two judges of this court have said, why not give more information if what you're interested in is protecting public information? Why don't you read the statute as setting a floor but not a ceiling? Why is it unreasonable to give employers and the public more information about the safety record of individual potential employees? I think you're on a statement of the issue. You state what is really before you. The question is not one of reasonableness. Oh, it is if we're at Chevron Step 2. Congress could have made it right. You've just misstated the law to us. You will agree, won't you, that at Chevron Step 2, if we find ambiguity, the question is whether the agency's position is reasonable. Can we agree on that? Yes, their position is not reasonable, however. Because why? Because it conflicts with their earlier interpretation of the statute in formal agency documents published in the Federal Register, and because allowing the disclosure of non-serious violations which had not been identified as part of the system of records notice conflicts with the Privacy Act. It is unreasonable to do something that conflicts with another statute. Ah, okay. That's your argument. That's my argument. That depends on us finding there was a Privacy Act violation and then concluding that it would be unreasonable under Chevron to permit this disclosure. But the reasonableness is compared to does it conflict with another statute. You can say that there are other reasonable policy decisions that Congress could have made, but that's not the issue. They made this policy. Excuse me, Counsel. Do you have a case that says that? That if there is a violation of another statute, Congress meant to control the discretion of the agency such that an agency decision to go in that direction is no longer reasonable. That's correct. Do you have a case? SUCCAR. Let me give you the citation for it. SUCCAR? Well, that's when something conflicts with a prior statement. And there's another case that talks about, SUCCAR says that if your interpretation under Chevron deference is in conflict with another statute, you can't do it. Okay.  Thank you, Counsel. Thank you. May it please the Court. Caroline Lopez on behalf of the Department of Transportation. I did want to reserve some time to discuss why plaintiffs lack standing as a threshold question, but to go first to the issues before the Court was just discussing. I did want to say first that there can't be a Privacy Act violation where there is consent. And that under 552AB, where there's consent by the person to whom the record pertains, that's enough. That's all you need under the Privacy Act. And that's exactly what we have here. He's arguing that it's coerced consent, that it really isn't consent, that in order to get employed, you have to sign off on this form, and that it really isn't consent. It's coerced. What's wrong with that argument? Two responses. First, that particular line of argument was waived because they didn't raise it in their opening brief, and the District Court's opinion was quite clear that it did believe that there was consent here, and so there couldn't be a Privacy Act violation. And that's at Addendum 17 through 18, Note 7, and also Addendum 21. I understood him to be making not only the argument that Judge Stahl has identified, which you say is waived, but to make a separate argument that your Privacy Act notice should have said that all safety violations will be released, not just serious safety violations. And you will, of course, say that no, that's not a violation of the Privacy Act. But why? Do you fall back on your consent argument? There are two responses to that, and then I will try and get back to Judge Stahl's original question on the merits as to why these aren't the type of coercion that courts have deemed to negate consent. The first, plaintiffs mischaracterize the content of the actual Federal Register notices. So in both the categories of records, i.e. those records that are available in the PSP system, and in the sources of records, i.e. the pool of records from which those documents are pulled, in both of those places, in the 2010 Federal Register notice, and that's repeated again in the 2012 Federal Register notice when PSP was updated. Specifically, the notice says categories of records include amicus extra containing the most recent five years crash data and the most recent three years inspection data, period. There's no serious limitation on that. Exactly, exactly. And that's in both Federal Register notices. So that's just a mischaracterization of what the Federal Register notices actually say. And then, as well, under the Privacy Act, the question is whether plaintiffs have consented to the release, or to be clear, these particular plaintiffs have not alleged they have actually been put into a position in which they would have to consent, but hypothetical plaintiffs that did make such allegations. And the consent form which plaintiffs have provided at Supplemental Appendix page 24 very clearly lays out what the records are, and I think it's helpful to turn to that language. A driver says, after identifying the prospective employer to whom the records would be released, I am consenting to the release of safety performance information, including crash data from the previous five years and inspection history from the previous three years. Again, period. There's no carve out or limitation there. And it goes on, the form goes on to emphasize to the driver, quote, any crash or inspection in which you were involved would display in your PSP report. And again, all inspections with or without violations appear on your PSP report. So the driver would have to sign that consent form. So it's not just what's in the Federal Register notice, which is itself sufficient, it's also what's on the face of the consent form. And there just can't be a Privacy Act violation there. So there can be crashes that are considered non-serious? The question of non-serious driver violations pertains to not crash information, so it pertains to inspection records. And those inspection records derive from, it's under 49 U.S.C. 31102. So the way these inspection reports come about are roadside inspections. As a driver is driving down the highway, state inspectors do these roadside inspections, and that's where these driver safety violations arise. So it's not that crash and inspection reports are two separate pools of information. Let's assume you have a rollover, a typical sort of accident, and that rollover might say that there was a blowout or there was speeding involved in the rollover. Would that all be in the accident report? I apologize. I'm not familiar with exactly what accident reports look like. I would assume that accident reports, like an accident report, if you or I get into one, would include any factors that were readily apparent. And I do know that crash reports would contain some data as to the condition of the truck after the accident. So I don't disagree that the consent form is certainly broad and as well as specific enough to include any kind of inspection or accident data. I think their position is that it doesn't say that you have a right under the Privacy Act to limit what can be released. I mean, they're saying that this is like a Hobson's Choice, that either they sign it or they don't have a realistic opportunity to seek employment if the employer, which I understand is also discretionary, seeks to have this information made available before making an employment decision. That's just not the type of coercion that is recognized as overriding consent. Under plaintiff's theory, any time a prospective employer, somebody you're seeking a mortgage from asks you to do a background check, provide references, somehow the fact that you were seeking this new economic benefit would mean that that negated any consent you gave. And that would just invalidate a broad swath of this country's economic life. And that just can't be true. And as Your Honors pointed out earlier, not only would that be problematic writ large, but also with specifically, as I think I heard plaintiff's counsel agree, it actually would create a coercion problem for the records that are specifically enumerated in Section 31950. And the logic would require that specific statute to be struck down under their coercion theory. And I did want to turn quickly to the case that they cite, Tierney, which is a D.C. Circuit case. And just to clarify that Tierney doesn't stand for the proposition that they say it does. In fact, the court in Tierney expressly left open that a consent form that was worded differently than the consent form in Tierney could itself not have a coercion problem and so could go forward. And again, that context, the specific context of Tierney was also different here. Heel drivers are seeking a new economic benefit provided by a third party, whereas in Tierney, the consent form related to SSI benefits that beneficiaries were currently receiving and potentially directly from the government that might potentially have been taken away from the consent, under that consent form. And so those two things make that case entirely inopposite here. To turn briefly to standing, which is a threshold question, plaintiffs here haven't made the type of particularized and concrete allegations that are required. Why not? They say they might lose a job because you've gone beyond serious information about safety violations. You're throwing the whole kitchen sink at them. That could make a decision to not employ them more arbitrary. It could be a cloak for some other reason not to employ them, including an impermissible reason. So they have both reputational injury and dollar value injury. Why isn't that enough to at least bring the claim? Other plaintiffs might bring those specific allegations. These plaintiffs only say... How do they prove it? These plaintiffs only say generally that it might dissuade people from applying to jobs. These drivers never allege that they personally have either applied to a job and had this information go out, or that they personally were too afraid to apply for a job to do that. And so it's not that no plaintiff could ever make sufficient allegations. Are you saying the only plaintiff who would suffer sufficient injury would be one where the employer rejected the plaintiff for a job, and two, rejected him on the basis of non-serious violations? No, we're not saying that the court need go that far in this case, but under this court's precedent in Lennon, for the type of privacy act that's alleged here, which is the dissemination of materials that cause damage... It's not just a Privacy Act violation. They're claiming injury from a violation of a statute. And we're supposed to think of standing in Article III terms. So their complaint rests solely on a Privacy Act violation. This complaint wasn't also, for example, brought under the APA. And so the relevant question then on standing is whether under Doe v. Child they've alleged a type of specific injury that they need to under the Privacy Act. And under this court's precedent in Lennon, given that their Privacy Act violation cause of action depends on unlawful dissemination, the only people these reports that they allege these reports have ever actually been disseminated to as to these particular drivers is to the drivers themselves. And that's not the type of dissemination or disclosure required to allege a sufficient cause of action. Are you basically saying that from a pleading point of view, in order to allege standing, they would have had to say, I applied for a job and I didn't get it? No. Although this would have to be taken on a case-by-case basis with a complaint that did make adequate allegations, and here they come nowhere close. It might be enough under Clapper, for example, for them to allege that they were imminently going to apply for a job. There's a job they'd really like to apply to that they felt like they couldn't because they knew they had these violations on their report, but they don't even do that. One of the things which we haven't talked about, individual employers may look at these violations in different ways. In other words, in the abstract of employers, some might think one speeding violation is a no-no. And others might say, well, everybody has an occasional speeding violation. Don't they have some obligation to say, as a pleading matter, that this actually caused me some injury? Yes. I mean, yes. They have to allege some sort of particularized injury to themselves, and they haven't done that. They haven't done that either by saying, I applied for a job and didn't get it, nor have they said it even, I was too nervous to apply for a job and didn't apply because... Does the government really want us to dismiss this case, and then you face this exact same case with a few words added to the complaint? It is our policy that since standing is a threshold question, we do, when there are defects in the pleading, we do have to raise it for the court's attention. But we do believe, as we both argued in the brief and today, that even if the court were to find standing, that plaintiffs simply haven't pled a cause of action under the Privacy Act, because drivers consent to the information, and that their argument that Section 31150 somehow trumps FMCSA's pre-existing authority under the Privacy Act. So it's incorrect to... We appreciate that it's your policy to bring this issue to our attention. Thank you. And at the end of the day, that their Section 31150 argument, which we understand to be that it somehow trumps FMCSA's pre-existing authority under the Privacy Act, that simply isn't a cause of action under the Privacy Act. And as we've discussed, it also just isn't a correct understanding. I see my time has expired. Thank you. Could you make your best case for standing? The pre-employment screening program was designed to allow reports to be made that would reduce the economic value of a driver's services, so that drivers with many violations would be disfavored both with respect to hiring and the level of wages that they could attract, and the drivers with fewer violations would get better jobs at better pay. That may be a good idea, but when you violate the law by exceeding your statutory authority and releasing reports of driver violations not authorized by Congress, by its very nature, our clients are adversely affected. The intent of the report is to adversely affect them, and it does adversely affect them. Look at the statement made in the transcript in the court below where they brag that carriers are reporting to them that they hire better drivers at better pay, and by necessary correlation, they don't hire ones who have a lot of violations. So inherently there's an adverse effect for standing purposes. Your clients haven't alleged that they applied, nor have they alleged that they were discouraged from applying because of that. They have alleged the latter, and the records respecting, there were 22,000 requests at last check of motor carriers of driver violation reports, 22,000 per month. All of those records are under the control of the government, and we have not had discovery to identify which drivers have had reports requested of them. But 22,000 a month, that's a lot of drivers. So your position that they were discouraged from applying to some driving job in the economy versus they were discouraged from applying to a specific job opening, you know that's sufficient for these clients to have standing. The allegation is that they were discouraged from trying to seek better employment because they looked at their PSP reports and they had all these violations, some of which were not authorized by the statute. They were discouraged. The only thing we have to decide today is whether that is an adverse effect for standing purposes. They are adversely affected or aggrieved by a program that is designed to impair the economic value of their services. What could be more clear than that? And the $10 fee. They are entitled to challenge the accuracy and appropriateness of the PSP report under 31150B4. They have to pay $10 in order to get such a report. Okay? We'll give you... I would like to request a private consent. You have one minute. Your three minutes is up. I understand you were answering questions, but you've just got one minute. I appreciate your generosity, Your Honor. The consent form says that they are consenting to the release of inspection history reports for three years and it doesn't say whether those reports include reports of non-serious violations, which is the basic norm of contention here. So it's ambiguous. Does it include that? It's something that the statute doesn't say specifically should be included. You go to a document that was published simultaneously and it appears at the record, page 55 for the 2010 version and 64 for the 2012 version. And that document tells the driver specifically that they are going to extract only the three classes of documents identified in the statute for inclusion. So when he reads that, he cannot possibly be held to interpret... Okay. We've got you. ...the consent form for something that they said wouldn't be there in the first place. Thank you very much. Thank you.